1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VENTON SMITH,

            Plaintiff,

   v.

UNITED PARCEL SERVICE, INC., et al.,

            Defendants.

Case No. 20-cv-09460-EMC

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Docket No. 18

     Plaintiff was a car wash employee at United Parcel Service, Inc. ("UPS") who alleges that he suffered discriminatory and harassing treatment from his UPS supervisors. He took medical leave in 2017 and never returned to work, and he alleges that UPS effectively terminated him in retaliatory fashion for reporting unsafe working conditions. Plaintiff filed a complaint in San Francisco County Superior Court, naming UPS, United Parcel Service General Services Co., United Parcel Service Co., Donald Embers, Gregory Price, and Does 1-20 as Defendants, and the case was removed to federal court.

     UPS has filed a Motion to Dismiss Plaintiff's PAGA claims, Cal/OSHA claims, and the claim for wrongful termination in violation of the Fair Employment and Housing Act ("FEHA"). Docket No. 18.

# I.     <u>BACKGROUND</u>

     In the complaint, Plaintiff alleges as follows.

     Plaintiff was hired and began his employment at UPS on or around September 26, 2016. Compl. ¶ 17. Plaintiff is legally blind in his right eye. *Id.* ¶ 24. He alleges that he observed a violent and unsafe work environment that was created by his supervisors, Donald Embers and

United States District Court
Northern District of California

1  Gregory Price.  *Id.* ¶ 18.  Embers and Price directed their violent conduct toward a car wash

2  employee named "AP" who filed grievances against them.  *Id.*  Embers openly encouraged other

3  car wash employees to harass and retaliate against AP for the past grievances he had filed with

4  UPS's human resources department and the local union.  *Id.* ¶ 20.  For instance, employees were

5  instructed to block AP's personal vehicle with a locked UPS vehicle.  *Id.* ¶ 23.

6      When Plaintiff provided his supervisors with documentation of his physical disability, he

7  was met with derogatory comments (*e.g.*, "UPS only hires the handicap" and "You really are

8  blind, I could punch you in your blind eye and you wouldn't feel a thing").  *Id.* ¶ 24.  And when

9  Plaintiff refused to participate in the harassment of AP, Price and Embers refocused the bullying,

10  harassment, and intimidation on him.  *Id.* ¶ 26.  Price threatened Plaintiff with bodily harm and

11  Plaintiff experienced some of the same harassment that AP did.  *Id.* ¶ 28.  Namely, car wash

12  employees blocked Plaintiff's personal vehicle with a locked UPS truck and moved service

13  vehicles to create more work for him.  *Id.*  On April 12, 2017, Embers and Price verbally

14  confronted Plaintiff in Embers' office, which led several members of UPS senior management to

15  intervene.  *Id.* ¶¶ 30-31.  Plaintiff subsequently filed grievances with the human resources

16  department at UPS and the local union, alleging a hostile work environment.  *Id.* ¶¶ 32-34.

17  Plaintiff claims that his grievances went unresolved and his supervisors continued their

18  harassment and intimidation in April 2017, discussing ways to use his visual impairment to create

19  a vehicular accident that would lead to his termination.  *Id.* ¶ 36.

20      Plaintiff left on medical leave in April 2017.  *Id.* ¶ 37.  Before doing so, he informed UPS

21  management that UPS employees were carrying weapons into the facility, and of an unsecured

22  rooftop entrance.  *Id.*  Throughout May 2017, Plaintiff unsuccessfully attempted to contact Sheila

23  O'Mahony, of UPS human resources, regarding his prior grievances.  *Id.* ¶¶ 38-40.  On June 17,

24  2017, while on medical leave, Plaintiff filed an ADA accommodation application for a reduction

25  in his work week from 40 hours to 35 hours due to visual impairments resulting from straining in

26  his left eye.  *Id.* ¶ 42.  Thereafter, Plaintiff filed a complaint with the Equal Employment

27  Opportunity Commission, detailing his concerns about discrimination, retaliation, and unsafe

28  working conditions.  *Id.* ¶ 44.  Plaintiff also filed a complaint with the Department of Fair

Employment & Housing ("DFEH"), containing the same allegations, and DFEH issued a right to sue notice on July 7, 2017.  RJN, Ex. A (Docket No. 20).

In August 2017, Plaintiff sought permission to return to work, and Ms. O'Mahony denied the request because UPS could not meet Plaintiff's ADA accommodations.  *Id.* ¶ 45.  UPS's ADA panel denied Plaintiff's reduced workload request in November 2017 and informed Plaintiff that it did not have any alternative jobs for him.  *Id.* ¶ 46.

On November 1, 2019, Plaintiff contacted Ms. O'Mahony and asked for a return to work at 40 hours a week without any accommodations, but he did not receive a response.  *Id.* ¶ 52.  Plaintiff reached out to Ms. O'Mahony on two subsequent occasions in 2019, asking for a return to work without any accommodations, but did not hear back.  *Id.* ¶¶ 53-54.  Plaintiff filed his PAGA notice with the LWDA on June 29, 2020.  RJN, Ex. D (Docket No. 20) (hereinafter "LWDA Notice").  Plaintiff stated his intent to seek a civil action against UPS based upon California Labor Code §§ 98.7, 230, 1102.5, 6310, 6400, and 6401.  *Id.* at 1.

Plaintiff claims that UPS has used the ADA process to effectively terminate him for the complaints he made about safety concerns.  *Id.* ¶ 56.  Plaintiff alleges the same in his LWDA notice: "O'Mahony and UPS used the ADA process to effectively terminate [Plaintiff] for reporting his safety concerns."  LWDA Notice at 4.  Plaintiff brings this suit on behalf of similarly situated employees that (1) must continue working in an unsafe environment, (2) are retaliated against when they raise concerns about the unsafe work environment, and (3) are retaliated against for bringing workplace violence complaints.  Compl. ¶ 59.

Based on the foregoing, Plaintiff brings the following causes of action: (1) unlawful discrimination based on disability in violation of the Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12900, *et seq.*; (2) failure to accommodate disability in violation of FEHA; (3) failure to engage in the interactive disability accommodation process in violation FEHA; (5) retaliation for the exercise of legally protected rights in violation of Government Code § 12940(h); (6) failure to prevent and investigate discrimination and retaliation in violation of Government Code § 12940(k); (7) violation of California Labor Code § 6310 for discriminating against an employee who files a complaint or otherwise exercises their rights; (8) violation of

United States District Court
Northern District of California

3

California Labor Code §§ 6400 and 6401 for failure to provide a safe working environment; (9) violation of California Labor Code § 232.5 for retaliation against an employee who discloses information about an employer's working conditions; (10) violation of California Labor Code §§ 1102.5(a)-(c) for adopting policies that prevented Plaintiff from disclosing information to a government agency about unlawful conduct; (13) civil penalties under PAGA; and (14) wrongful termination in violation of FEHA.

Plaintiff asserts claims as a PAGA representative in his seventh, eighth, ninth, and tenth causes of action, in addition to the standalone claim for PAGA penalties in his thirteenth cause of action. *See* Compl. ¶¶ 141, 158, 168, 187.  Plaintiff agreed to dismiss the fourth, eleventh, and twelfth causes of action, and to dismiss United Parcel Service General Services, Co., United Parcel Service Co., Donald Embers, and Gregory Price as Defendants.  Opp. to MTD at 16; Reply at 1. At issue before the Court are Plaintiff's eighth (unsafe work environment), ninth (retaliation), thirteenth (PAGA penalties), and fourteenth (wrongful termination) causes of action against the sole remaining Defendant (United Parcel Service, Inc.), along with UPS's motion to strike the PAGA claims from Plaintiff's seventh (discrimination for exercise of rights) and tenth (disclosure to government) causes of action.

## II.      DISCUSSION

A.      PAGA Claims

The Court first analyzes the PAGA claims in Plaintiff's complaint.  Plaintiff brings his seventh cause of action (Cal/OSHA retaliation) and tenth cause of action (whistleblower retaliation) as both individual claims and on behalf of aggrieved employees as PAGA claims. Plaintiff asserts his eighth cause of action (Cal/OSHA workplace safety) and ninth cause of action (right to disclose working conditions) solely as PAGA claims, and he seeks PAGA civil penalties in his thirteenth cause of action.  UPS moves to dismiss the PAGA portions of the seventh and tenth causes of action (but not the individual claims), and it moves to dismiss the eighth, ninth, and thirteenth causes of action in their entirety.

1.      PAGA Statute of Limitations

When an aggrieved employee files a notice with the LWDA seeking PAGA penalties, they

United States District Court
Northern District of California

United States District Court
Northern District of California

1    must identify "the specific provisions of [the Labor Code] alleged to have been violated, including

2    the facts and theories to support the alleged violation."  Cal. Lab. Code § 2699.3(a)(1)(A).  The

3    statute of limitations on filing a PAGA Notice with the LWDA is one year.  *See* Cal. Civ. Proc.

4    Code § 340(a).  The one-year statute of limitations period begins when the alleged labor violations

5    cease.  *Brown v. Ralphs Grocery Co.*, 28 Cal. App. 5th 824, 839, 239 Cal. Rptr. 3d 519, 530

6    (2018).

7          An employee's PAGA claim may accrue (and the statute may begin to run) on the date of

8    termination, but it may accrue earlier if the allegedly unlawful conduct ceased before termination.

9    *See Esparza v. Safeway, Inc.*, 36 Cal. App. 5th 42, 63 n.11, 247 Cal. Rptr. 3d 875, 893 (2019)

10   (holding that "[c]ourts … may use the end of employment as shorthand for the most recent time at

11   which a cause of action may have accrued" but no authority suggests that "a PAGA cause of

12   action accrues *because of* the end of employment") (emphasis added).  In *Esparza*, for instance,

13   the end "of [Plaintiff's] employment [was] irrelevant to the timeliness of her claim premised on

14   violations occurring years *before* her employment ended."  *Id.* at 63 (emphasis added).

15         Here, Plaintiff's PAGA Notice to the LWDA was filed on June 29, 2020.  LWDA Notice

16   at 1.  It describes a pattern of retaliatory and harassing conduct which began on September 26,

17   2016 (the date Plaintiff was hired) and which continued through April 2017, when Plaintiff went

18   out on stress leave.  *Id.* at 1-3.  It describes the grievances Plaintiff filed with human resources,

19   and the request for an ADA accommodation reducing Plaintiff's workweek from 40 hours to 35

20   hours, all of which occurred in 2017.  *Id.* at 3.  The Notice states that Plaintiff contacted Ms.

21   O'Mahony for permission to return to work on **August 8, 2017**, *id.*, a request that was effectively

22   denied.

23         In particular, Plaintiff alleges that Ms. O'Mahony unilaterally opined before the ADA

24   panel that Plaintiff was incapable of performing an essential work function if he could not return

25   to work at 40 hours per week.  *Id.*  The Notice does not provide the date on which Ms. O'Mahony

26   provided this opinion to the panel, but it indicates that it occurred shortly after Plaintiff requested

27   permission to return to work on August 8, 2017.  *See id.*  The Notice then states that Ms.

28   O'Mahony and UPS "*used* the ADA process to effectively terminate [Plaintiff] for reporting his

5

safety concerns." *Id.* at 4 (emphasis added). Plaintiff does not provide the date on which he was effectively terminated, but the Notice indicates that it occurred shortly after he sought permission to return to work on August 8, 2017. *See id.*

In sum, the conduct alleged in the Notice occurred more than one year before the PAGA notice was filed with the LWDA on June 29, 2020. The Notice does not allege that harassing and retaliatory conduct continued through 2018 and 2019. Thus, Plaintiff's allegations in the June 2020 LWDA Notice described a completed act, and Plaintiff did not provide any indication that the alleged Labor Code violations were ongoing.

Plaintiff's unsuccessful attempt to contact Ms. O'Mahony in 2019, again seeking a return to work, cannot make up for the procedural deficiencies in his LWDA Notice. The Notice does not mention the attempted contact with Ms. O'Mahony occurring in 2019. Plaintiff's Notice only describes the completed acts of harassment, refusal to accommodate, and effective termination, all of which occurred in 2017.[1]

Accordingly, Plaintiff's PAGA claims are time-barred and are dismissed with prejudice. Some of Plaintiff's PAGA claims are barred for additional reasons.

### 2. Cal/OSHA Claims

Plaintiff's eighth and thirteenth causes of action are for PAGA penalties based on violations of the Labor Code's Cal/OSHA health and safety provisions (§§ 6400, 6401), and UPS alleges that the claims fail to meet the Labor Code's statutory requirements. Before an aggrieved employee can commence a civil action for violations of these safety provisions, she must "give

---

[1] The purpose of the PAGA notice requirement "is to afford the relevant state agency, the Labor and Workforce Development Agency, the opportunity to decide whether to allocate scarce resources to an investigation, a decision better made with knowledge of the allegations an aggrieved employee is making and any basis for those allegations." *Williams v. Superior Court*, 3 Cal. 5th 531, 545-46, 220 Cal. Rptr. 3d 472, 484, 398 P.3d 69, 79 (2017). Under the notice procedure, the employer has an opportunity to submit a response to the employee's allegations, and that response is filed with the LWDA. Cal. Lab. Code § 2699.3(a)(1)(B). Thus, the notice requirement serves an important function and is a "mandatory precondition to bringing a PAGA claim." *Esparza*, 36 Cal. App. 5th at 59. Here, the PAGA Notice did not allege unlawful conduct by UPS occurring in 2019, which deprived UPS of the opportunity to respond to the 2019 allegations, and deprived LWDA of the opportunity to decide whether to allocate its scarce resources to investigating such claims. Because the allegations in the LWDA Notice occurred between 2016 and 2017, the one-year PAGA limitations period expired in 2018.

United States District Court
Northern District of California

1   notice by online filing with the Division of Occupational Safety and Health and by certified mail

2   to the employer, with a copy to the Labor and Workforce Development Agency, of the specific

3   provisions of Division 5 (commencing with Section 6300) alleged to have been violated, including

4   the facts and theories to support the alleged violation." Cal. Lab. Code § 2699.3(b)(1).

5   Cal/OSHA is then required to investigate. Cal. Lab. Code § 2699.3(b)(2). If Cal/OSHA fails to

6   investigate, then the employee must send a *second* notice, this time to the LWDA and the

7   employer. Cal. Lab. Code §§ 2699.3(b)(2)(B), 2699.3(c)(1)(A). The employer then has 33 days

8   to "cure" the alleged violation, and if the employer fails to do so, the employee may commence a

9   civil action. Cal. Lab. Code § 2699.3(c)(2)(A).

10          UPS contends that Plaintiff never served the first notice to Cal/OSHA and did not serve the

11   second notice to the LWDA and UPS after Cal/OSHA failed to investigate. MTD at 9-10.

12   Plaintiff counters that, when PAGA notices are electronically filed with the LWDA, they are

13   automatically filed concurrently with Cal/OSHA (and thus, Plaintiff's June 29, 2020 PAGA

14   Notice was concurrently received by Cal/OSHA). Opp. to MTD at 8. But even if the Court

15   assumes that Plaintiff's first notice was filed concurrently with Cal/OSHA, it is undisputed that

16   Plaintiff never sent a second notice to the LWDA and to UPS, as required by statute. Cal. Lab.

17   Code §§ 2699.3(b)(2)(B), 2699.3(c)(1)(A). Thus, Defendant is correct that Plaintiff failed to

18   exhaust the statutory remedies for his eighth cause of action.

19          Because these are statutory prerequisites which Plaintiff has not followed, Plaintiff's

20   eighth cause of action for a Cal/OSHA workplace safety violation is **dismissed with prejudice**.

21   B.   Wrongful Termination in Violation of FEHA

22          The statute of limitations to file a complaint for wrongful termination in violation of FEHA

23   is one year from the date DFEH issues the right to sue notice. Cal. Gov. Code § 12965(b); *Hall v.*

24   *Goodwill Indus. of S. Cal.*, 193 Cal. App. 4th 718, 730, 123 Cal. Rptr. 3d 274, 283 (2011) ("[t]he

25   FEHA's one-year limitations period began to run as of the date of the right-to-sue notice issued to

26   [plaintiff], December 24, 2004 … [and plaintiff's] civil suit, filed December 30, 2005, was

27   untimely"). Plaintiff received his right to sue notice from DFEH on July 7, 2017. RJN, Ex. A

28   (Docket No. 20). He alleges that he was effectively terminated by UPS for reporting his safety

1   concerns.  LWDA Notice at 4.  But he did not file a civil action within one year of the date DFEH

2   issued the right to sue notice, and he is time-barred by the one-year statute of limitations.  Cal.

3   Gov. Code § 12965(b).

4           Plaintiff argues that his claims are saved by the continuing violation doctrine.  Opp. to

5   MTD at 13-14.  Plaintiff cites the California Supreme Court's opinion in *Richards*, which held that

6   "an employer's persistent failure to reasonably accommodate a disability, or to eliminate a hostile

7   work environment targeting a disabled employee, is a continuing violation if the employer's

8   unlawful actions are (1) sufficiently similar in kind …; (2) have occurred with reasonable

9   frequency; (3) and have not acquired a degree of permanence."  *Richards v. CH2M Hill, Inc.*, 26

10  Cal. 4th 798, 823, 111 Cal. Rptr. 2d 87, 106, 29 P.3d 175, 190 (2001).

11          This doctrine does not apply to Plaintiff's claims.  Plaintiff has not worked as an employee

12  at UPS since 2017.  Plaintiff alleges, in both the complaint and the LWDA Notice, that UPS

13  effectively terminated him as retaliation for reporting unsafe working conditions.  *See* Compl. ¶

14  56; LWDA Notice at 4.  Because UPS made clear to Plaintiff that further efforts at

15  accommodating his disability with a reduced workload would be futile, Plaintiff was

16  constructively discharged.  Thus, the alleged Labor Code violations by UPS were consummated,

17  and the doctrine of continuing violations does not save the claims from the limitations bar.  *Cf.*

18  *Richards*, 26 Cal. 4th at 823 (holding that, in the context of FEHA claims, "[i]f the employer has

19  made clear in word and deed that the employee's attempted further reasonable accommodation is

20  futile, then the employee is on notice that litigation, not informal conciliation, is the only

21  alternative for the vindication of his or her rights").

22          Accordingly, the Court finds that Plaintiff's claim for wrongful termination in violation of

23  FEHA is barred by the one-year limitations period.

24  C.      Wrongful Termination in Violation of Public Policy

25          At the motion hearing, Plaintiff's counsel asked for leave to amend the complaint to bring

26  a claim for wrongful termination in violation of public policy.  In *Tameny v. Atl. Richfield Co.*, 27

27  Cal. 3d 167, 170, 164 Cal. Rptr. 839, 840, 610 P.2d 1330, 1331 (1980), the California Supreme

28  Court held that "when an employer's discharge of an employee violates fundamental principles of

United States District Court
Northern District of California

8

public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." *Id.* The elements of a claim for wrongful termination in violation of public policy are "(1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused the plaintiff harm." *Yau v. Allen*, 229 Cal. App. 4th 144, 154, 176 Cal. Rptr. 3d 824, 831 (2014). *Cf. Garcia-Brower v. Premier Auto. Imps. of CA, LLC*, 55 Cal. App. 5th 961, 973, 269 Cal. Rptr. 3d 856 (2020) (same).

The Court notes, however, that some courts have held that an employee need not allege termination to bring a *Tameny* claim. Employees who experience adverse consequences in the workplace, such as demotions or suspensions, may bring *Tameny* claims even in the absence of termination. *See Williams v. Sacramento River Cats Baseball Club, LLC*, 40 Cal. App. 5th 280, 288, 253 Cal. Rptr. 3d 129, 135 (2019) ("courts have recognized the claim's applicability to employees who have experienced adverse employment actions, such as demotions or suspensions"); *Garcia v. Rockwell Internat. Corp.*, 187 Cal. App. 3d 1556, 1562, 232 Cal. Rptr. 490, 492 (1986) ("an employee can maintain a tort claim against his or her employer where disciplinary action has been taken against the employee in retaliation for the employee's whistle-blowing activities, even though the ultimate sanction of discharge has not been imposed") (internal quotation marks omitted).

Because Plaintiff alleges that he suffered adverse consequences for reporting unsafe working conditions, the Court will grant Plaintiff leave to amend to allege a new cause of action for a *Tameny* claim.

### III.   CONCLUSION

The Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's PAGA and Cal/OSHA claims, **with prejudice**, for failure to comply with the limitations period and statutory prerequisites. Accordingly, the eighth cause of action (Cal/OSHA workplace safety), ninth cause of action (right to disclose working conditions), and the thirteenth cause of action for PAGA civil penalties are dismissed with prejudice, as are the PAGA portions of the seventh cause of action (Cal/OSHA retaliation), and the tenth cause of action (whistleblower retaliation). The Court

9

GRANTS Defendants' Motion to Dismiss Plaintiff's fourteenth cause of action for wrongful termination in violation of FEHA **without prejudice**, and it GRANTS Plaintiff leave to amend to allege a *Tameny* claim for wrongful termination in violation of public policy.

This order disposes of Docket No. 18.


IT IS SO ORDERED.


Dated: May 6, 2021

_____
EDWARD M. CHEN
United States District Judge